Good morning, Your Honors. May it please the Court. Jimmy McBurney on behalf of Appellant Fernando Gonzales-Vergara. Your Honors, Mr. Gonzales-Vergara did not receive a fair trial. Far from it. And the principal reason for that is because of ample, overwhelming, and undisputed evidence of a prior deportation that was not the basis for his indictment, that was barred by the statute of limitations, and that the government agreed at the time of trial could not and would not serve as the basis for convicting him. Now as I'll talk about in a moment, this evidence was overwhelmingly prejudicial and should not have been admitted at all. But most significantly, the district court never once instructed the jury that it could not find this 1998 deportation to satisfy the element of the offense. And that was the fundamental error at this trial. Now, wait a minute. Let's put it into context. I'm not sitting there as a judge. I've got two lawyers in front of me. They're competent lawyers, as far as I know. Both of them agree that this evidence can come in. And you believe that the judge should say, no, I'm going to go back and study it. I don't trust you. That's why we have lawyers, and that's why we have the clear air standard. And in this case, even stronger, there's a stipulation it should come in. How all of a sudden do we bounce this case for the defendant when it comes in that way? Your Honor, that would be what the plain air doctrine is for. And as a practice It would be if something happened. But the counsel were very clear to keep their stipulation. The 1998 was only used to show that he was an alien. There was no argument further than that that I saw on the record, or at least cited in the briefs. Well, Your Honor, first and foremost, the stipulation was very limited. And the stipulation applied to two of the five exhibits that were admitted into evidence that provided proof of the 1998 deportation. Now, there was no instruction whatsoever as to the other three exhibits, and no stipulation as to those. And no request for an instruction? Correct, Your Honor. No objection, no request for instruction, which is why we're under the plain air standard. But as to those three exhibits, the jury wasn't instructed. And the end jury instructions also contained nothing explaining to the jury that they could not use 1998 as evidence of the offense. Now, as to the other two exhibits, there was a stipulated limiting instruction. And that instruction said that those two exhibits could be used only for two particular purposes. But again, the instruction never actually said explicitly that 1998 could not be a basis. So while the jury was not instructed to use the 1998 as evidence of the deportation, there was no instruction at any time telling the jury that 1998 cannot be the prior deportation used for the previously removed element.     And your view is the judge had been sensitive to that, even though the lawyers weren't, that that was a problem, and that that was plain air? Yes, Your Honor. That's correct. Okay. As to the three exhibits for which no instruction was given, there is very clear law on this point, and that's the United States v. the Jaramatracios case and, more recently, the U.S. v. Sugeriano's case. Both those cases are very clear that in a 1326 case, evidence of a barge deportation cannot come in unless there is a robust limiting instruction, and also, as I'll talk about in a moment, there must be no other way to prove the alienage element. Was it our word, robust? No, Your Honor. I apologize. That's your word. Yes, Your Honor. Okay. Thank you. So in this case, though, there's no dispute that there was no limiting instruction whatsoever for those three, and I think, frankly, the Court's inquiry could properly end here. With regard to the evidence as a whole. It's still plain air, right? I mean, the standard would be plain air because there's no objection to the admission of the three without the limiting instruction. Correct, Your Honor. So I apologize. It's really different. Certainly. The inquiry into whether there was air and whether it was plain, I think, can end there because the law was very clearly established on that point. With regard to whether it was prejudicial, that requires further look at the record, and in this case, we think it certainly was. Why? Well, because, Your Honor, first and foremost, the jury was never told 1998 could not be used as a basis for the conviction. Robust or otherwise. Robust or otherwise, Your Honor. Well, but still why? I mean, just take a step back on the facts. Is there any real doubt that this individual has reentered the country and was found in the United States after deportation and after a deportation that could be lawfully cited? Yes, Your Honor. I think there is. We don't think he was actually deported in 2003? Because once there's evidence to conclude he was deported in 2003, this case is basically over, isn't it? Well, two issues, Your Honor. First of all, we've raised the insufficiency of the evidence position, and I think it has merit. In this case — Don't you have to win that? Because if he was deported in 2003, how could there be any substantial injustice resulting from any of these alleged plain errors? Your Honor, I don't think we have to win that position. And the reason is the fundamental injustice here is that the process wasn't correct and the appellant didn't receive a fair trial. You need prejudice. You need prejudice. And what's the prejudice if, in fact, he was deported in 2003 and he came back? How does that change anything? How will a new trial do anything other than reach that result, perhaps through a different mechanism? Well, let me answer that in two parts. First of all, with regard to insufficiency of the evidence, this Court must conclude that no reasonable juror could have found that he was deported in 2003 beyond reasonable doubt. That's a very high standard. I think it's met here, and I'll talk about that in a moment. But even if that standard isn't met, the fact remains that on this record, at best, all we can say is that we have no idea whether the jury convicted based on the 2003 deportation or whether the conviction was based on the improper 1998 deportation. We just don't know. And so whether the evidence is sufficient that a jury could conclude 2003 was a deportation or not, there certainly isn't a record here where we can say with any certainty that a jury of Appellant's peers actually did reach that conclusion. And that's the prejudice here. Well, but imagine a retrial. Is there any possibility of a different result? Certainly, Your Honor. I think How? What's the defense? The defense is that the only direct evidence of the 2003 deportation was a warrant of deportation that did not have a fingerprint identification, did not have any other reliable identification such as an expert match signature. The only real mechanism for identification on it was Well, we know he was picked up. We know he was incarcerated. I forgot where. Was it Sacramento or someplace like that? Yes, Your Honor. We know he had his fingerprints from that time, and it matches the person we're having the right guy in Sacramento County Jail and not getting him across the border. Okay. Maybe it's happened, but is that reasonable now? Well, here's what we know. We know that on August 12th, 2003, Appellant was being held in a Sacramento jail eight miles from the Mexican border. We also know that he How many miles? I'm sorry? Sacramento Jail? Yeah, I estimated eight hours from the Mexican border, but who knows? He could have flown. By car, it's about eight hours. Well, I was curious about your driving habits in eight hours from Sacramento Jail. Fair enough, Your Honor. I'll not comment on that one. We also know that he attested that he stated that the last time he entered the country as of 2008 was on August 12th, 2003. What we don't have is any direct evidence of him getting from Sacramento by plane or speeding or non-speeding car to the Mexican border. And I understand that. But taking a step back, when the plane air standard does have a piece which suggests that, okay, does this really make a difference in the jury is going to come up with a different result if it does proceed properly. Suppose they're completely instructed with regard to 2003, so there couldn't be confusion about which one to look at. Could they really reach a different conclusion as to whether he had been deported in 2003, given his own statement as to when he came back, given that they had him in the Sacramento County Jail, given that that's the person that's supposed to have been deported? Well, Your Honor, a jury could certainly reasonably conclude that as opposed to appellant being picked up in Sacramento that same day ending up at the Mexican border, and then sometime that evening coming back across the Mexican border and not being seen again until 2008, I think a jury could reasonably conclude that  okay, he came over on August 12, 2003, he at some point was caught, he was taken to Sacramento, and for whatever reason he was released. I mean, the important thing here is there's no direct evidence of how he got from Sacramento to the Mexican border and then apparently walked right back across the same day. And without that, there's a lot of speculation that has to happen. And that's why we think that... Why do you say he walked back the same day? Well, because he says that he... In 2008, appellant said that he had last entered the country, not been deported, last entered on August 12, 2003. Well, that's his statement, Your Honor. Right. So if the government is correct that they deported him that day, it would mean he would have had to have just turned right around and walked right back across on that same day. If you believe him. I'm sorry, Your Honor? If you believe him. If he believes him. And it was clear, wasn't it, that he came back in about the same area where he was deported? According to his statement, yes. His statement. If you believed him. But even if that were true, I would imagine this is a pretty common border crossing. I mean, the point is... The world is busy, as they tell us. Yes, indeed, Your Honor. So the point is this is a question for the jury. And the fundamental injustice here is we simply have no idea whether the jury reached that conclusion or not. And that's prejudicial, and that's the error that we ask would be reversed, above all others. Your Honor, is there the time for rebuttal? Yes, Your Honor. Thank you very much. We'll hear from the government. Good morning. My name is Joshua Hill. I'm representing the United States on this matter. Your Honor, it is clear from the trial record in this case that the government proved beyond a reasonable doubt that the defendant was deported on August 12, 2003. There were the fingerprints, the 10-print card taken in Sacramento, so the defendant was in immigration custody on August 12, 2003. There is the warrant of deportation, which counsel has minimized, but in fact, it has a clear picture which was, in fact, enlarged for the jury to make the positive comparison between the defendant and the foe. This was a colored picture? It was a colored picture, Your Honor. I saw it. The warrant of deportation is stamped August 12, 2003 through the San Ysidro port of entry, and then the defendant's sworn statement is that he reentered the United States on August 12, 2003 through that, he said, Tijuana, which shares the border with San Ysidro. So a jury could logically conclude beyond a reasonable doubt that the defendant had been deported on August 12, 2003. Now, you charged that in the indictment. Then why did you – what was the point of the 1998 deportation being shown? Well, this Court's ruling is that, well, there are five elements to the 1326 offense, one of which is that the defendant is not a U.S. citizen, is an alien. This Court has held that admissions alone are not sufficient to prove alienage. The government did not have a certified copy of the defendant's birth certificate. Defense counsel chose not to enter into any stipulations as to the elements of the offense in this case, and rightfully, as was his right, put the government to its burden of proof on alienage. So the 1998 deportation was admitted solely to prove alienage in conjunction with the defendant's admissions of foreign birth. This is – this is perfectly appropriate under this Court's precedents, and this is the reason – the whole reason for my main question. And then they jointly agreed on a jury-independent instruction the Court would give  That's correct, Your Honor. The parties jointly agreed that the order of deportation for the February 1998 deportation and the actual warrant to deportation would be admitted solely for the purpose of showing alienage. Okay. Now, you have all of that, and then counsel argues that there should be a robust argument you can't use it for anything else. That is, one more sentence says, and I mean it, and you don't use it for anything else. Now, his – his argument is that's error because the jury was never advised in the plain error – plain error that the jury was never advised they couldn't use it for something else. Well, it's – I think it's a matter of semantics, Your Honor. I think that the Court instructed the jury that it was to be used for one purpose. Yes. And that is alienage and the reinstatement order. Right. Well, I think it's a matter of semantics, Your Honor, and I think it's a matter of semantics, Your Honor, and I think it's a matter of semantics, Your Honor, whether the Court could have or the parties could have stipulated to a second clause of that sentence is not plain error. Plain error does not support a reversal of the defendant's convictions. And we'll now argue that on what basis. Why is it not plain error? Well, the – the not including a phrase for no other purpose? Right. Well, the – if the Court instructs the jury, and we presume the jury follows the Court's instructions, that these two documents which prove up the 1998 deportation are to be used for the limited purpose. Limited means no other purpose, as I understand that word. Well, I don't have that jury instruction in front of me, but did the stipulated jury instruction say limited purpose? Yes, Your Honor. Okay. Well, now, in your brief, page 8, you say that the defendant's argument is without merit. I say that because the timing of the deportation is immaterial, so long as the defendant was found after having been deported. That seems to say that the 1998 deportation could count just as much as the 2003 one. That is correct. The 1998 deportation could count. And this gets into an area of the statute. And if he hadn't been indicted for it? The indictment specified the 2003 deportation, did it not? It did, Your Honor. So how can he be convicted for something that's not in the indictment? Well, in this case, the defendant was convicted on the basis of the August 12, 2003 indictment. Well, now the 1998 – The whole argument given to us by defendants is that, well, that may not be so because the jury wasn't told in the instructions to the jury that it had to be that – it was a limited instruction that overtly pertained to some but not all of the exhibits that referred to 1998. And there was testimony about 1998, and there was argument, well, reference at least to 1998. So I was caught by the same argument that Judge Noonan comments on. He suggests, well, it really doesn't matter because he could have been convicted on 1998, but in fact he couldn't, could he? Not with an indictment that specified 2003. Not with a stipulation by the government that he wouldn't be convicted on 98, but only on 2003? Well, that argument made by the government in its brief is a response to defendant's claim that the 1998 deportation was barred by the statute of limitations, which it's not. Now, in terms of – Well, but it seems to me it shows that the government, thinking the 1998 deportation is relevant proof, and you not only make that statement on page 28, you make it on page 29. So you seem to be just as confused as the jury might have been in thinking the 1998 conviction is the – deportation is the basis. No, Your Honor. So if I could back up for a moment, Your Honor. The reason why the government based its case on the August 12, 2003 deportation is because that deportation followed the defendant's conviction for an aggravating felony. The 1998 deportation was before his conviction for an aggravated felony, and the government charged this case under 1326 subsection B, which provides for enhanced penalties. That is why the government sought delimiting instruction and litigated this case on the basis of the August 12, 2003 deportation. There's no confusion as to whether the 1998 deportation could support a conviction. It could. But if it did, then you have a question of whether the defendant was properly sentenced, because – Why do you say it's immaterial in this case as to what date was used? I believe in a footnote in our brief we say this implicates apprendi. It's not – it's immaterial – No. Page 8, you don't have any footnote. You just say it's immaterial. It's immaterial as to whether the defendant is guilty of the offense of reentering the country following a prior deportation. It's immaterial as to whether he is guilty of that offense. It is material as to whether his statutory maximum penalty would be 2 years or 20 years as it is in this case. And the sort of the argument and the briefing regarding the propriety of the 1998 deportation has a basis for conviction. Well, let me – let me reach a false sentence here. Defendant's claim that the jury should have been instructed that to find that he had been deported – that he had been deported on a specific date is without merit because the timing of the deportation is immaterial so long as the defendant was found after having been deported. Now, if you thought that, I think the jury might have thought that. Well, the jury would not think that, Your Honor, because the jury was – I mean, you state there it doesn't make any difference. Correct? In response to the defendant's argument that the 1998 deportation would have been time-barred or was otherwise – could not serve as a basis for conviction, our response to that particular argument is that that's wrong. The 1998 deportation could support a conviction, but in this case, the parties sought the limiting instruction to ensure that the jury convicted him on the basis of the August 12, 2003 deportation. Let me reach a sentence. And you say it again on 29. If the case is tried that way, that is, we've got an indictment that specifies 2003. We have an agreement by the government for the context of the trial that 2003 is the date of the deportation. If the indictment is based on the 1998 deportation, and the 1998 does not, how does it matter to us that in a different world or in a different trial or with a different indictment, there could have been a conviction based on the 1998 departure or deportation? Because, in fact, as you've volunteered, the indictment here and the agreement made by the government in the context of this trial says 2003. I mean, how can we go back and say, you know, it really doesn't matter if, in fact, the whole trial was premised on it being based on the 2003 deportation? The government is not suggesting that it doesn't matter. I guess it goes to harmless error, plain error in this case. The government's argument is that even if the jury or defendant believes he was convicted on the basis of 1998 deportation, it does not go to whether he is guilty of the offense of reentering the country following a prior deportation. It only goes to whether there was sentencing error. The government argued that in this case, based on the limiting instruction, the defendant was convicted, in fact, on the basis of the August 12, 2003 deportation. So I may have misread your brief. Let's see if I have an understanding now. You're not making the assertion that there's not error because the trial could have proceeded or did proceed on a 1998 theory. You're suggesting that the trial did go forward on 2003, and to the extent there was confusion, it may not raise the level of plain error because, in the end, it wouldn't have made a difference. That's correct, Your Honor. Okay. If there are no other questions, Your Honor, the government asks that the Court affirm the jury verdict. Thank you. Thank you. Rebuttal? Yes, Your Honor. Two points. First of all, a lot of focus was given in the government's argument to the limiting instruction as to those two exhibits. Again, even assuming that that instruction was sufficient, there was no instruction as to the other three exhibits, no instruction as to much of the testimony and argument about 1998. And so even if you ignore those two exhibits and assume that the limiting instruction properly cured them, you still have all of this other evidence of 1998. And the jury instructions here allowed the possibility for the jury to convict on either. The Supreme Court has been very clear in United States v. Griffin that when there's a possibility of a conviction based on a proper basis and an improper one, prejudice is presumed because we simply cannot assume what the jury did. And that's the case here. At best, this record gives us no idea whatsoever what the basis for the jury's conviction was. And, you know, I think Your Honor has made the point very well. There was enough evidence at this trial for it to be based on 1998. There certainly were attacks on 2003. And the fact that the government argued extensively in its brief that 98 could serve as the basis for the conviction shows that there was a lot of evidence at the trial, and at least there's a possibility that that was the basis for the jury's decision. And that's why the government made the argument incorrectly that 1998 could serve as a fallback. One of the things that bothers, of course, is that there's a lawyer representing the defendant during all this period of time. There's no indication it is an incompetent lawyer. There's no attack upon his abilities. He gets a limiting instruction, not robust for everything else, but a limiting instruction. And they all argue the case as if it's 203. All argument was that way. They don't even mention the other except to show alienation. Under all of that, do we have to reverse it? Is there really plain error involved? Well, Your Honor, I would disagree with one thing you said, which is that the case was entirely argued based on 2003. The government elicited extensive testimony about 1998. And while some of it's Under the idea of a deportation or under alienage? Well, some of it went to alienage, but a lot of it was simply irrelevant to any purpose that it was in there for. I mean, one purpose given for the limiting instruction was to show context of the later deportation. And so there was a lot of discussion about, which is in the briefs, about the 1998 deportation for that purpose. To the jury? To the jury, yes, Your Honor. And the government concluded its closing argument by reciting the multiple deportations to show that Appellant was a serial offender and the government uses his grounds to urge the jury, quote, to end his game of illegal reentry. So both of these were certainly before the jury. And Sort of a prior conduct argument? Certainly, Your Honor. That was there. We have all the time. Certainly, Your Honor. And I see I'm over. If I might briefly conclude. Whether there is sufficient evidence to prove 2003 or not, the miscarriage of justice here is that we have no idea whether that's what the jury believed. And that, above everything else, is why I believe this conviction should be reversed. Thank you, Your Honors. Thank you. We thank both counsel for the helpful arguments. The case just argued is submitted. The last case in today's calendar has been submitted on the briefs. That's Morris v. Budge. So that concludes our calendar for today. We're adjourned. All rise.
judges: Wallace, Noonan, Clifton